| | |
|---|---|
| United States ex rel.<br>PAUL FABULA, and PAUL FABULA, Individually<br><br>    Plaintiff-Relator<br><br>    v.<br><br>AMERICAN MEDICAL RESPONSE, INC.,<br><br>    Defendant. | No. 3:12-cv-921 (MPS) |

**MEMORANDUM AND ORDER**

Plaintiff-Relator Paul Fabula, brings this action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*., against Defendant American Medical Response, Inc. ("AMR"). Pending before the Court is Plaintiff-Relator's motion for extension of the deadlines set out in the Second Amended Scheduling Order (ECF No. 131) and a discovery dispute between the parties. I attach to this ruling the correspondence and discovery requests received from the parties regarding their dispute. On September 5, 2018 I held a telephonic oral argument concerning the dispute. This ruling resolves the issues raised in the parties' correspondence and those raised in the telephonic oral argument.

**I.    BACKGROUND**

    **A.    Procedural History**

On June 22, 2012, Fabula filed this *qui tam* action as a relator on behalf of the United States. (ECF No. 1.) The United States declined to intervene in 2013. (ECF No. 18.) Fabula filed his second amended complaint ("SAC"), bringing a claim on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729(a)(1) and (a)(2) ("FCA"), and a claim on his own behalf for

retaliation in violation of 31 U.S.C. § 3730(h). The Court dismissed the FCA claim and the retaliation claim, but stayed its decision to give Chorches, the trustee of Fabula's bankruptcy estate, a chance to pursue the claims. (ECF No. 67.) Chorches pursued the FCA claim by timely filing the Third Amended Complaint ("TAC"), which the Court later dismissed as well. (ECF No. 82.) In July 2017, the Second Circuit reversed the dismissal of the claims, holding that the SAC stated a retaliation claim and that the TAC stated a claim under the FCA. *See United States ex rel. Chorches v. Am. Med. Response*, *Inc.*, 865 F.3d 71 (2d Cir. 2017). Fabula subsequently moved to file a Fourth Amended Complaint (FAC), combining the retaliation claim from the SAC with the FCA claim from the TAC and substituting Fabula for Chorches given that his bankruptcy proceeding had concluded. (ECF No. 105.). The Court granted the motion on January 3, 2018. (ECF No. 115.)

B. **Fabula's Claims**

Fabula claims that the Defendant violated the FCA by seeking reimbursement from Medicare and Medicaid for ambulance transports that it certified were medically necessary despite knowledge that they were not. (ECF No. 105 ¶ 14.)[1] Fabula alleges that, as an employee of AMR, he was forced to modify Patient Care Reports ("PCRs") based on handwritten notes given to him and his co-workers by supervisors. (*Id.* at ¶ 24.) He claims that the changes were required in order to fraudulently convert non-reimbursable trips into reimbursable trips under Medicare and Medicaid. (*Id.* ¶ 32.) The FAC lists several specific ambulance runs for which Fabula was instructed to revise his PCRs in order to obtain payment from Medicare or Medicaid. (ECF No. 105 ¶¶ 88-94, 97, 99, 100.) The FAC additionally alleges broader schemes aimed at increasing reimbursements from Medicare and Medicaid. For example, Fabula claims that an

---

[1] The claims are taken from Fabula's Fourth Amended Complaint. (ECF No. 105.) The FAC did not change the substance of the claims from the SAC or the TAC. (ECF No. 115.) The reasoning behind the Second Circuit's opinion in this case thus applies with full force here.

electronic filing system required "that the box for 'paramedic assessment' had to be checked for every run, and that no PCR could go through the system and be processed without checking Advanced Life Support . . . assessment." (*Id.* at ¶ 133.). These designations would trigger reimbursement for an additional $1,200 to $1,500 from Medicare or Medicaid per ambulance run. (*Id.* ¶¶ 134-136.) Similarly, Fabula alleges that the computerized forms would automatically insert "Yes" in the field asking whether patients were "bed confined" regardless of whether that designation was accurate (*Id.* ¶ 139.) This made it more likely that the ambulance trip would be reimbursable. (*Id.* ¶ 65.)

Fabula's retaliation claim focuses on a specific PCR. He alleges that he was ordered to make changes to a PCR for an ambulance run in early December 2011 (*id.* ¶ 50), but that he refused, (*Id.* ¶ 59, 70). AMR allegedly responded by threatening him with termination (i*d.* ¶ 72), and later suspended him and refused to allow him to return to work, (*Id.* ¶ 73). Fabula alleges that this indefinite suspension amounted to a *de facto* termination of his employment. (*Id.* at ¶ 74.)

## II.    DISCOVERY DISPUTE

Following remand from the Second Circuit, the Court ordered the parties to file a revised report under Local Rule 26(f). (ECF No. 96.) In their report, the parties jointly requested phased discovery as the Second Circuit had suggested in its opinion in this case. (ECF No. 99 at 7) (citing *Am. Med. Response*, *Inc.*, 865 F.3d at 88 n.13 ("Where a *qui tam* relator identifies representative examples of false claims or, as here, makes allegations leading to a strong inference that specific false claims were submitted, defendants could initially be required to provide discovery only with respect to the cases identified in the complaint.")). The Court adopted the parties' request in its scheduling order. (ECF No. 120.) As a result, the Court ordered

that discovery would take place in two phases, with Phase I including only "(1) the specific claims and ambulance runs identified in the operative Complaint; (2) Fabula's retaliation claim; and (3) whether Mr. Fabula is judicially estopped from recovering on the False Claims Act claims against Defendant." (*Id.*)

Fabula takes issue with AMR's responses to 10 discovery requests based on AMR's understanding of the scope of Phase I.[2] Fabula also argues that AMR improperly limited its production and responses to requests related to the retaliation claim to a narrow set of ambulance runs, contrary to the Court's order.[3]

A. **Scope of Phase I Discovery**

The parties dispute the scope of the phrase "specific claims and ambulance runs" in the scheduling order. (ECF No. 120.) AMR argues that the Phase I discovery is limited to the individual instances in which Fabula was ordered to falsify a PCR in connection with an ambulance run described in the complaint (the "Subject Transports"). Fabula contends that the phrase "specific claims and ambulance runs" also encompasses the broader schemes intended to increase the proportion of Medicare-reimbursable ambulance runs or the amount of reimbursement for each run. (*E.g.*, ECF No. 105 ¶ 134-136; 139.) I adopt AMR's view. The footnote in the Second Circuit's opinion on which this discovery plan was based suggested limiting discovery to specific "cases," a term the court used to refer to particular ambulance runs and the requests for payment associated with those runs. *See Am. Med. Response*, *Inc.*, 865 F.3d at 87 ("While invoice numbers and the dates of their submission would undoubtedly have put

---

[2] Fabula specifically contests AMR's responses to Relator's First Set of Interrogatories Nos. 3 and 4; Relator's First Set of Requests for Production of Documents Nos. 11 and 12; Relator's Second Set of Interrogatories Nos. 2 and 3; and Relator's Second Set of Requests for Production of Documents Nos. 15, 17, 21, and 22.
[3] Fabula takes issue with AMR's responses to Plaintiff's First Set of Interrogatories Nos. 1-6; Plaintiff's First Request for Production of Documents Nos. 7-10, 12, and 18; Relator's First Request for Production of Documents Nos. 14 and 15; and Plaintiff's First Request for Production of Documents Nos. 17 and 18.

4

AMR on notice of specific claims allegedly submitted to the government, so do details provided in the TAC (such as dates of runs, patient names, actual reasons for the transport, and the information entered into PCRs) with respect to specific runs for which false claims were submitted . . . . [B]y alleging with particularity AMR's scheme to falsify PCRs in order to qualify runs as medically necessary, and identifying particular cases in which that scheme was carried out, Fabula [has satisfied Rule 9(b)]"). Although language in the parties' conference report used the word "claims" instead of "cases," I find that the most reasonable reading of that term in this context is the meaning ascribed by the FCA. *See* 31 U.S.C. ¶ 3729(b)(2) (defining "claims" in the FCA as a "request or demand . . . for money or property").

The parties also dispute the scope of discovery in Phase I for Fabula's retaliation claims. Fabula suggests that he was terminated because he opposed AMR's broad scheme to defraud Medicaid and Medicare. He thus contends that he should be allowed discovery on the entire scheme. As alleged in the complaint, though, his retaliation claim is relatively narrow: he claims that he was terminated because he refused to falsify a specific PCR from December 2011. (ECF No. 105 ¶¶ 50-75.) Indeed, the Second Circuit held that Fabula successfully pled a claim for retaliation by alleging that he was terminated for "refusing to falsify a single PCR." *Am. Med. Response, Inc.*, 865 F.3d at 96. In Phase I, then, discovery relating to the retaliation claim is properly limited to the events surrounding Mr. Fabula's refusal to alter the form and the subsequent decision to terminate his employment.

With these general clarifications of the scope of Phase I discovery in mind, I turn to the parties' specific disputes.

### 1. Relator's First Set of Interrogatories Nos. 3 and 4

5

AMR's response to No. 3 is clear and complete. Fabula asks whether AMR used software that automatically indicated a paramedic assessment had been conducted or required entry of "bed-confined" to complete PCRs. AMR denies that the software it used had those characteristics. Interrogatory No. 4 is conditional, requiring a response only if the answer to No. 3 is affirmative. Given AMR's denial to No. 3, it has no obligation to reply further to No. 4. Fabula does not indicate how these responses are deficient.

2.     **Relator's First Set of Requests for Production Nos. 11 and 12**

AMR's objections on the basis that Request Nos. 11 and 12 exceed the scope of discovery for Phase I are SUSTAINED. Fabula requests documents relating to "paramedic assessment" or "bed-confined" software features and any review or audit of claims submitted for reimbursement that used those features. As noted, Phase I discovery is limited to the specific ambulance runs ("Subject Transports") alleged in the complaint as well as retaliation and judicial estoppel. The software features are relevant only to the broader scheme that Fabula alleges and do not pertain directly to the particular ambulance runs identified in the FAC. As a result, although AMR has indicated that it will produce certain training documents in response to Request for Production No. 11, it has no obligation during Phase I to turn over any documents in response to Request for Production Nos. 11 or 12. Further, Request for Production No. 12 is conditioned on an affirmative response to Interrogatory No. 4, to which AMR responded in the negative.

3.     **Relator's Second Set of Interrogatories for Production Nos. 2 and 3**

AMR's objections on the basis that Request Nos. 2 and 3 exceed the scope of Phase I are SUSTAINED. Fabula seeks identification of "all PCRs for AMR Ambulance Transports in Connecticut that were amended, corrected or rewritten in 2010 and 2011." AMR also requests

identification of all PCRs that Mr. Fabula was instructed to alter. Those requests exceed the limits set out in the Court's order. Phase I is limited to Subject Transports, retaliation, and judicial estoppel. AMR meets its obligation by providing PCRs for the Subject Transports alleged with specificity in the complaint. As noted, the retaliation claim is limited to a specific PCR relating to an ambulance run in December 2011, and the FAC indicates that Fabula refused to alter that PCR.

### 4. Relator's Second Request for Product Nos. 15, 17, 21, and 22

AMR's objections on the basis that Request Nos. 15, 17, 21, and 22 exceed the scope of Phase I are SUSTAINED. Each of these requests is relevant only to the broader scheme Fabula alleges, but they are not relevant to the Subject Transports. Fabula may be entitled to discovery on these issues in Phase II discovery.

### 5. Plaintiff's First Set of Interrogatories Nos. 1–6; Plaintiff's First Set of Requests for Production Nos. 7–10 and 12; Relator's First set of Requests for Production Nos. 14 and 15

Defendant's objections to Plaintiff's Interrogatories Nos. 1–6 and Relator's Requests for Production Nos. 14 and 15 on the basis that the requests exceed the scope of Phase I are SUSTAINED. These requests seek information related to AMR's alleged general practice of changing PCRs to obtain reimbursement from Medicare and Medicaid. This goes well beyond both the Subject Transports and the communications about the December 2011 PCR that are the subject of the retaliation claim.

Defendant's objections to Plaintiff's Requests for Production Nos. 7–10 and 12 are SUSTAINED for the same reason. These requests ask AMR to turn over documents related to Interrogatories Nos. 1–6.

**6. Plaintiff's First Request for Production of Documents Nos. 17 and 18**

Defendant's objections to Plaintiff's Requests for Production Nos. 17 and 18 are SUSTAINED. The requests are unduly burdensome and exceed the scope of Phase I. Phase I discovery is limited to the Subject Transports and the communications concerning the specific PCR that Fabula allegedly refused to alter. AMR meets its obligation by producing the PCRs related to the Subject Transports and the PCR that Fabula was allegedly ordered to falsify (and related communications, *see* FAC ¶¶ 50-75). AMR is not obligated in this phase to provide broader statistics about billing rates across its Connecticut branches or alleged efforts to increase the proportion of ambulance runs reimbursable by Medicare or Medicaid.

### III. MOTION FOR EXTENSION OF DEADLINES UNDER SECOND AMENDED SCHEDULING ORDER (ECF NO. 127)

The motion for an extension of the deadlines in the Second Amended Scheduling Order is GRANTED IN PART AND DENIED IN PART. The Phase I discovery deadline shall be extended by 30 days to October 12, 2018. Defendant shall then have 30 days to file any dispositive motion based on Phase I discovery (due by November 12, 2018).

I note that I have no view on the merits of any potential motion for summary judgment in this case. As discussed during the recent oral argument, however, the limited discovery available in Phase I will leave Defendant with a heavy burden. *See* Fed. R. Civ. P. 56(d); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment. . . . Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.") (internal citations and quotations omitted).

IT IS SO ORDERED.

          /s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
              September 12, 2018