UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES *ex rel.* PAUL FABULA, and PAUL FABULA, individually, | : : : | |
| Plaintiff-Relator | : : | CASE NO. 3:12-CV-921-MPS |
| v. | : : | |
| AMERICAN MEDICAL RESPONSE, INC., | : : | |
| Defendant. | : | November 5, 2019 |

**RULING ON MOTION FOR RECONSIDERATION**

**I.  INTRODUCTION**

I assume familiarity with and incorporate by reference the Court's Summary Judgment Ruling, ECF No. 177, granting in part and denying in part Defendant AMR's motion for summary judgment. Fabula filed a motion for reconsideration on September 23, 2019. ECF No. 178. For the following reasons, the motion for reconsideration is denied.

**II.  LEGAL STANDARD**

Under District of Connecticut Local Rule of Civil Procedure 7(c), a party may file a motion for reconsideration, which is "equivalent as a practical matter to a motion for amendment of judgment under Fed. R. Civ. P. 59(e)." *Salvagno v. Williams*, No. 3:17-CV-2059 (MPS), 2019 WL 2720758, at *4 (D. Conn. June 27, 2019); *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991). Local Rule 7(c) explicitly notes that "[s]uch motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." And the Second Circuit has approved a strict standard on motions for reconsideration, holding that "[a] motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence,

1

or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

## III. DISCUSSION

In his motion for reconsideration, Fabula argues that "the Court overlooked data and factual matter which, at the very least, create triable issues of fact warranting denial of summary judgment in the entirety." Fabula Mem., ECF No. 178-1 at 3. But the motion does not "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Indeed, most of the evidence and arguments discussed in the motion are addressed in the Court's summary judgment ruling. To the extent Fabula cites evidence not explicitly addressed in the original ruling, that evidence is not controlling and does not alter the conclusions I reached in the summary judgment ruling. I address some of the major points in the motion below, but do not address points already discussed at length in the summary judgment ruling.

### A. Emails from Lindsay Martus (ECF No. 153 at 20–21; ECF No. 152-5 at 29)

Fabula points to two emails from AMR supervisor Lindsay Martus that he claims "establish[] that [] AMR provided instructions to EMTs and paramedics to revise and/or prepare addenda for PCRs to establish medical necessity." Fabula Mem., ECF No. 178-1 at 4. These emails do not relate to the Complaint Ambulance Runs as to which Fabula was required to submit evidence raising a genuine dispute of material fact. The Complaint Ambulance Runs for

patient WP occurred in Summer 2011, but the emails discuss an October 1, 2010 transport, ECF No. 153 at 20–21, and a March 15, 2011 transport that Fabula was not on, ECF No. 152-5 at 29. Neither of these emails creates a genuine dispute of material fact as to whether AMR submitted a false claim to the Government in connection with a Complaint Ambulance Run.

Fabula also misstates the nature of these emails and overstates their import. *Compare* Fabula Reply, ECF No. 185 at 5 ("Two of those emails (ECF Nos. 153 at [20–21], 152-5 at 29) plainly evidence that AMR instructed its personnel to provide false or misleading information in addenda to establish medical necessity. . . . Glaringly absent from the emails is any language indicating that the written instructions about what to add are discretionary or merely a 'guide' or 'helpful information.'") *with* Martus Email, ECF No. 153 at 21 ("[W]hen I put the paperwork out to ops with the med nec reason that we have on file it doesn't mean that the employee must document the reason I noted, *this is just helpful information . . . .*") (emphasis added) *and* Martus Email, ECF No. 152-5 at 29 ("Mr[.] Bodiford is also NOT REQUIRED to document what we write on the cover sheets, *this is just a guide* for the EMT/or Medic to assist the author of the PCR.") (emphasis added).

### B. Berry Deposition (ECF No. 152-3 at 61)

Fabula also highlights deposition testimony by his expert, Peter Berry, to support his argument that two addenda for patient WP "stating that the patient was unable to sit due to 'postural hypotension' were false, in that the contemporaneous information in the PCRs entered at the time of the runs did not indicate that WP was suffering from postural hypotension at the time of the run, and contained no medical information to support such a diagnosis." Fabula Mem., ECF No. 178-1 at 4–5. Specifically, Berry testified that he found "no physical findings whatsoever of postural hypotension in *any* of the documents" relating to patient WP, including

any of the physical assessments or vital signs. Berry Dep., ECF No. 152-3 at 61 (emphasis added).

This argument relies on a theory that was not pled—*i.e.*, that AMR failed to comply with Medicare rules because it failed to document vital signs or make other physical assessments in its PCRs. *See* Summ. J. Ruling, ECF No. 177 at 37. With respect to the transports of WP, the Fourth Amended Complaint pled a theory of factually false addenda that "include[d] false statements purportedly demonstrating medical necessity . . . whether or not ambulance service was in fact medically necessary in the particular case." *United States* ex rel. *Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 76 (2d Cir. 2017). Fabula's argument now seeks to draw unsupported and unreasonable inferences that lack of documentation amounts to evidence of factual falsity. *See, e.g.*, Fabula Reply, ECF No. 185 at 6–7 (claiming that PCRs for WP demonstrate "objective falsity because they contain no medical information of any kind demonstrating postural hypotension"). For patient WP, the failure to document evidence of postural hypotension (failing to document vital signs, for example) on each PCR simply does not suggest that patient WP did not suffer from that condition. *See also* Summ J. Ruling, ECF No. 177 at 28 ("Fabula was not involved with the runs he has identified and has offered no evidence that patient WP did not actually suffer from postural hypotension."). Because the Fourth Amended Complaint pled a theory of factual falsity, *i.e.*, that AMR instructed crew members to insert factually false information into revisions to PCRs, it was Fabula's burden to produce some evidence of factual falsity with respect to the Complaint Ambulance Runs involving patient WP; nothing in the motion for reconsideration suggests that he did so.

### C. Fourth Amended Complaint

Finally, Fabula attempts to recast some allegations of his Fourth Amended Complaint and to elide the factual and legal differences between the distinct theories pled in that complaint. For example, Fabula now suggests that the December 4, 2011 run that is the basis for his retaliation claim "demonstrate[s] AMR's intentional practice of falsifying PCRs to bill to Medicare." Fabula Mem., ECF No. 178-1 at 6 n.5. But the evidence concerning the December 4, 2011 run does not raise a triable issue of fact about a false claim under the FCA because Fabula has adduced no evidence that this run was billed to Medicare or Medicaid. In fact, in his Fourth Amended Complaint, he alleges AMR was "thwarted" by Fabula's and Bodiford's refusal to recreate the PCR for this run and "was not successful in submitting its claim for payment to Medicare." Fourth Am. Compl., ECF No. 105 ¶ 75. Further, the evidence concerning the December 4, 2011 run cannot shore up gaps in the proof concerning the other runs: tied as it is to Fabula's termination, a one-time event, this December 4, 2011 run does not suggest that any other runs—in particular the Complaint Ambulance Runs—were handled in a similar manner.

Likewise, Fabula now suggests that his theory concerning ALS assessments—as to which the Court denied summary judgment—is really just a specific manifestation of his theory about "the falsity of documentation prepared by EMTs and paramedics at the direction of AMR for submission to Medicare for payment." Fabula Mem., ECF No. 178-1 at 6 & n.5. The central theory in the complaint, however, is not a vague assertion about "falsity of documentation." It is, rather, a claim that AMR supervisors instructed crew members to *revise* previously submitted PCRs to add information that was false. It is a theory of *post hoc* falsification after initial review by AMR supervisors. By contrast, the theory concerning ALS assessments asserts that AMR

5

mandated intentional upcoding on PCRs in the first instance. Denying summary judgment on the latter theory, therefore, is not inconsistent with granting summary judgment on the former.

The summary judgment ruling already adequately addresses the remaining points made in Fabula's motion for reconsideration.

**IV. CONCLUSION**

For all the foregoing reasons, the motion for reconsideration, ECF No. 178, is DENIED. The Court's October 4, 2019 Order, ECF No. 183, is modified as follows: within fourteen days of this order, the parties shall file a revised Rule 26(f) Report to identify appropriate topics for further discovery, to propose a reasonably abbreviated period to complete such discovery, and to propose a schedule for trial.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
November 5, 2019